# Fleming v. Ogden, Appellant.

[Marked to be reported.]

*Deed—Misrepresentations—Assignment by married woman for the benefit of her husband's creditors.*

An assignee for the benefit of creditors will be perpetually enjoined from selling the real estate of the wife of one of the assignors, where it appears that she joined in the deed of assignment upon the representation of her husband that the debts of his firm amounted to only two hundred and fifty thousand dollars, whereas in fact they exceeded six hundred thousand, and that if she joined in the deed she would save to her husband and her sons the business in which they were engaged, which in point of fact was untrue.

Argued Oct. 25, 1892.   Appeal, No. 335, Nov. T., 1891, by defendant, John Ogden, assignee of Cochran Fleming et al., from decree of C. P. No. 1, Allegheny Co., June T., 1891, No. 875, granting a perpetual injunction in favor of plaintiff, Sarah A. Fleming.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for injunction.

The bill averred that Sarah A. Fleming was, prior to Oct. 3, 1890, the owner in fee simple of five tracts of land, all situated

in the borough of Sewickley. The tract or piece of ground first described was conveyed to her by John Fleming and wife, in 1863. The other four described pieces were conveyed to her by John Starr and others, Nov. 22, 1865. On Oct. 3, 1890, Cochran Fleming, Jonathan Kidd Fleming and Cochran Fleming, Jr., as copartners under the firm name of Fleming Bros., and individually, executed and delivered to John B. Reno a deed of voluntary assignment, dated Oct. 3, 1890, which was duly recorded, by which they conveyed to him all their individual and partnership estate for the benefit of their creditors, which trust was accepted by said Reno. That the said Sarah A. Fleming is the wife of said Cochran Fleming, Sr., one of the parties to said deed of voluntary assignment, and that in said instrument of writing, the following paragraph appears :

" And Sarah A. Fleming, wife of said Cochran Fleming, for the consideration of one dollar ($1) to her in hand paid by said second party, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell and convey unto John B. Reno, the said party of the second part and his heirs, all her dower and right of dower in and to all and every parcel of real estate now owned and hereby conveyed by her said husband, or in which he may have any interest, or in which she, the said Sarah A., might at any time have or claim to have dower, and also all real estate owned by her, the said Sarah A. Fleming, or standing in her name, or of which she appears to be the owner, wheresoever the same may be, or be situated. Said real estate is conveyed to the said Reno and his heirs upon the same trusts and for the same purposes as the individual property of said Cochran Fleming, Sr."

That she signed said instrument of writing and acknowledged the same, but that neither the sum of one dollar, therein expressed, nor any other consideration whatsoever was paid or given her for so doing. That said Jonathan Kidd Fleming and Cochran Fleming, Jr., are sons of plaintiff. That she first knew of the failure of the firm on October 3, 1890, at the time the deed was presented to her for her signature and acknowledgment, and that she was pressed and urged by her husband to sign it upon the representation that, by so doing, she would save to him and her sons the business in which they were engaged under the name of Fleming Bros. That she begged

some portion of her property should be omitted, but her husband refused to consent that any portion should be excluded; and that being greatly worried and distressed by the misfortunes of her husband and sons, and overcome by the demands of her husband, without advice or time or opportunity to obtain advice as to her legal right, she signed and acknowledged said instrument. That no consideration was paid by any creditor of Fleming Brothers to this plaintiff or her husband, or to any member of the firm of Fleming Brothers, or by said Reno, the assignee, for or by reason of her joining in the assignment. Ogden was afterwards appointed assignee instead of Reno.

The master, J. H. Miller, found as a fact that Mrs. Fleming owned five pieces of real estate situate in the borough of Sewickley; that the piece or parcel first described in the bill was conveyed to her by John Fleming and wife in 1863, and was paid for out of the proceeds of sale of land in Newport, Kentucky, which she owned in her own right. The proceeds of this sale were received and used by the firm of which her husband was a member, and repaid to her by the conveyance of real estate described in the bill.

The master found the facts as to the signing of the deed to be as follows :

" The plaintiff first knew of the failure of the firm of Fleming Brothers on the morning of October 3, 1891. Her husband during that day came from their home in Sewickley borough to Pittsburgh ; had the deed of assignment drawn, and returned with it in the evening. Mrs. Fleming knew nothing about the paper until after tea, and she first objected to signing it. Mr. Fleming, her husband, had requested Mr. Whitesell, an attorney at law and notary public, to come to his house in the evening and take the acknowledgment of the grantors to the deed of assignment. After Mr. Whitesell came, she went out of the room into an adjoining one, and her husband followed her, and told her that if she would convey her property to the assignee he would be able to pay the entire debt of the firm, and would have the business left. He said that the indebtedness amounted to $250,000, and that with her real estate, in addition to the firm and individual assets, he could pay the debts and save the business, and it was with

that impression that she finally signed the deed. She hesitated about signing it, and her daughter, Mrs. Reno, advised her not to sign it. Her son, Cochran Fleming, Jr., after talking with his father and John B. Reno, and being informed by his father that with Mrs. Fleming's real estate in addition to the securities he supposed he had, the debts could be paid and the business left, advised his mother to sign the deed, and told her at the time that she would be a very much happier woman if this was done ; that then she could have money if she wanted it, and that the firm would have the business left and be in better circumstances than before the assignment. Her husband said to her that if she would sign the deed it would pay all their debts and give him the business free. She asked him if she could not keep out the lot in the rear of Mrs. Reno's residence. He put the pen in her hand and said, ' No, you can't reserve anything. What is yours is mine, and I want you to sign the deed.' She asked the notary if the deed would convey the lots of her daughters, Mrs. Reno and Mrs. Nevin. And being informed that it would not affect them, she signed and acknowledged the deed. The deed was executed without the payment of the sum of one dollar as therein expressed, or any other consideration by any party. The indebtedness of the firm of Fleming Brothers on the 3d day of October, 1890, exceeded $600,000. Jonathan Kidd Fleming, a member of the firm of Fleming Brothers, states it at $620,000."

The master recommended a decree perpetually enjoining defendant from selling plaintiff's real estate.

Exceptions to master's report were overruled, and decree entered in accordance with his recommendation by SLAGLE, J.

*Error assigned* was, inter alia, decree, quoting it.

*S. Schoyer, Jr., S. B. Schoyer* with him, for appellant.—The inducement held out to Mrs. Fleming was not a present condition of affairs which was untrue but a statement and an expectation of a result to be arrived at by reason of her very act of making the deed of voluntary assignment, and she took the risk. At the time this bill was filed, it is true no arrangement had been made by which Fleming Bros. could continue to carry on the business. The filing of the bill of itself destroyed every prospect of such a result, and plaintiff contributed as

much as anybody else to prevent the realization of the promise held out to her by her husband at the time she signed the deed that creditors would permit them to retain the business.

Mrs. Fleming was under no duress at the time she signed the deed, as the master finds; she was therefore free to delay the execution of the deed until she had satisfied herself as to the correctness of every representation. She did not choose to do so. She had the opportunity to know, and did not avail herself of her opportunity, and therefore waived her right by executing the deed.

The case is not like Riddle v. Hall, 99 Pa. 116, where a mortgage was held bad as against public policy: Geier v. Shade, 109 Pa. 180; Pearce v. Wilson, 111 Pa. 14.

*J. S. Ferguson*, with him *E. G. Ferguson* and *B. C. Christy*, for appellee.—If there was no legal duress it was moral constraint of the strongest kind, and at all events it intensifies the truth of the master's finding that what finally overcame plaintiff's resistance was the representation that the debt only amounted to $250,000, and that with her real estate, in addition to the firm and individual assets, he could pay the debts and save the business. If there was to be no gain, she no doubt would have continued to resist. If she had known, what was the fact, that the indebtedness was over $600,000, she never would have signed the paper.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893:

This was a bill filed in the court below by Sarah Fleming, the plaintiff, to restrain John Ogden, assignee of the firm of Cochran, Fleming & Co., from selling the real estate of the plaintiff, conveyed by her to the said assignee. The case is peculiar. The firm of Fleming Bros., composed of Cochran Fleming, plaintiff's husband, J. Kidd Fleming, and Cochran Fleming, Jr., became insolvent and unable to pay its debts. A deed of voluntary assignment was executed by the members of the firm as a firm, and by the individual members thereof. The wife of Cochran Fleming, the plaintiff in this bill, joined in that deed of voluntary assignment by which her separate estate was conveyed to the assignee for the benefit of the creditors of the firm. The master finds that she first knew the insolvency of the firm on the 3d day of October, 1890, at the time the deed was

presented to her for signature and acknowledgment, and that she was pressed and urged by her husband to sign it upon the representation that by doing so she would save to him and her said sons the business in which they were engaged under the name of Fleming Brothers; that she begged that some portion of her property should be omitted; her husband refused that any portion should be excluded, and that being greatly worried and distressed by the misfortunes of her husband and sons, and overcome by the demands of her husband, without advice or time or opportunity to obtain advice as to her legal rights, signed and acknowledged said instrument; that no consideration was paid by any creditor of Fleming Brothers to the plaintiff or her husband, or to any member of the firm of Fleming Brothers, or by said Ogden, the assignee, for or by reason of her joining in this assignment.

It further appears from the report of the learned master that she signed the deed, relying upon the representation of her husband that the debts of his firm amounted to only two hundred and fifty thousand dollars, whereas is fact they exceeded six hundred thousand.

The representation and inducement, that by signing the deed she would thereby save the business of the firm, and prevent the insolvency of her husband and sons, was untrue in point of fact, and undoubtedly misled her.

Under such circumstances, we think the learned master and the court below were right in their conclusion, that the assignee should be perpetually enjoined from selling the plaintiff's real estate, and that her conveyance of it by the deed of assignment should be declared void and of no effect.

The creditors of Fleming Brothers had no right to her property, or to have it applied to the payment of the debts of the firm. They did not give the firm credit upon the strength of her ownership of this real estate. They gave her no consideration for the assignment, and she was undoubtedly deceived and misled by her husband, unintentionally perhaps, as to the condition of the firm at the time of the assignment. We can understand how a wife would be willing to part with her property to save her husband and sons from ruin, and to preserve a business for their support, but no woman of any sense would voluntarily throw her estate into such a yawning gulf of insol-

vency as this case discloses; that she did not do it voluntarily is clear upon the evidence and findings of the master, and we see no reason in law or morals, why her property should be applied under such circumstances to the payment of the debts of the firm.

We need not discuss the specifications of error in detail. The decree of the court was right.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.